J-S09033-22

2022 PA Super 64

| | | |
|---|---|---|
| JOSEPH ROY, BY AND THROUGH HIS GUARDIAN DOROTHY ROY | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| ROBERT RUE, HAMMERHEADS SPORTS BAR AND GRILLE, JJJ FAMILY RESTAURANT, PAT'S 3517, INC. | : : : : : : : | No. 1598 EDA 2021 |

APPEAL OF: ROBERT RUE

Appeal from the Order Entered June 22, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  110204688

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                          **FILED APRIL 12, 2022**

Appellant, Robert Rue ("Mr. Rue"), appeals from the June 22, 2021, order entered in the Court of Common Pleas of Philadelphia County, which denied Mr. Rue's petition to open and strike the default judgment entered against him and in favor of Appellee, Joseph Roy ("Mr. Roy"), by and through his guardian, Dorothy Roy ("Ms. Roy").[1]  After a careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] On January 25, 2011, the Court of Common Pleas of Philadelphia County, Orphans' Court division, adjudicated Mr. Roy an incompetent and incapacitated person, and the court appointed his mother, Ms. Roy, as his guardian.

The relevant facts and procedural history are as follows: On March 3, 2011, Ms. Roy, the guardian of Mr. Roy, filed a complaint alleging that, during the late evening of April 23, 2010, and into the early morning hours of April 24, 2010, Mr. Roy was a patron of the JJJ Family Restaurant/Hammerheads Sports Bar and Grille ("Hammerheads"),[2] which is a bar and restaurant located in Philadelphia. Ms. Roy averred that, during this time, Hammerheads served alcohol to Mr. Rue, who was visibly intoxicated.

Ms. Roy alleged a disturbance broke out inside of Hammerheads, and several patrons, including an acquaintance of Mr. Roy, were escorted out of the establishment by Hammerheads' employees. Mr. Roy was neither involved in this disturbance nor escorted out of the establishment.

However, upon discovering his acquaintance was outside, Mr. Roy exited Hammerheads and stood on the sidewalk in front of the establishment when a group of people, including Mr. Rue, began to argue. Without warning or provocation, Mr. Rue violently struck Mr. Roy in the back of the head, thereby causing catastrophic injuries to Mr. Roy, who, as of the time of the filing of the complaint, was in a permanent vegetative state and dependent upon a ventilator. Mr. Roy subsequently died on May 4, 2020.

_____

[2] Pursuant to the parties' stipulation filed on August 17, 2012, the caption was amended to reflect the correct name of the restaurant and bar to include Pat's 3517, Inc.

In the complaint, Ms. Roy raised claims of negligence against Hammerheads, as well as claims of assault and battery against Mr. Rue. An affidavit/return of service reveals Ms. Roy used a process server, Jodi Broder, who served the complaint on Mr. Rue at 3260 Teesdale Street Apt. 2, Philadelphia, PA ("the Teesdale Street residence") on March 11, 2011, at 9:25 p.m., by handing it to an "[a]dult family member with whom said Party resides[:] Debbie Rue" ("Ms. Rue"), who was later identified as Mr. Rue's mother.[3] **See** Affidavit/Return of Service, filed 3/12/11. Additionally, an affidavit/return of service reveals Jodi Broder served Ms. Roy's complaint on Hammerheads at 3517 Cottman Avenue on March 11, 2011, at 9:45 p.m., by handing it to Danny Dragoni, an agent in charge of the party's office or usual place of business.

On April 5, 2011, counsel for Hammerheads entered her appearance, and on June 14, 2012, Hammerheads filed an answer with new matter and a crossclaim. Ms. Roy filed a reply to the new matter on June 29, 2012.

Having received no answer from Mr. Rue, Ms. Roy filed a ten-day notice of intent to enter default judgment pursuant to Pennsylvania Rule of Civil Procedure 237.1. The ten-day notice was served upon Mr. Rue on June 9, 2012, by certified mail return receipt requested and by regular mail addressed

---

[3] We note the Teesdale Street residence was, and continues to be, the sole address listed for "Defendant: Rue, Robert" on the trial court docket in the instant matter.

- 3 -

to the Teesdale Street residence.  Mr. Rue had ten days to respond, and he failed to do so.

Accordingly, on June 22, 2012, Ms. Roy filed a praecipe to enter default judgment against Mr. Rue, and the trial court entered a default judgment against Mr. Rue on June 22, 2012. The notice of entry of default judgment was served upon Mr. Rue on June 22, 2012, by certified mail return receipt requested and by regular mail addressed to the Teesdale Street residence.

On January 7, 2013, the trial court filed an order indicating that an assessment of damages trial against Mr. Rue would take place on January 16, 2021, at 9:30 a.m.  The trial court informed Mr. Rue that if he failed to appear the damages trial would take place in his absence.  The certified docket entries contain a notation that notice of this order was provided under Pa.R.Civ.P. 236 on January 8, 2013.

Mr. Rue failed to appear for the assessment of damages trial, and on January 18, 2013, a verdict of damages was entered against Mr. Rue in the amount of $23,206,444.85.  Specifically, the trial court's verdict sheet reveals $21,206,444.85 for economic damages and $2,000,000.00 in pain and suffering. The certified docket entries contain a notation that notice of this verdict was provided under Pa.R.Civ.P. 236 on January 18, 2013.[4]

---

[4] Thereafter, with court approval, Ms. Roy entered into a settlement agreement with Hammerheads.

On February 18, 2021, Mr. Rue filed a petition to open the default judgment.[5] Therein, Mr. Rue averred he was incarcerated when the trial court held the assessment of damages trial, and he did not appear for the trial because he had no notice thereof. Mr. Rue acknowledged the docket reveals the Prothonotary provided notice of the damages trial pursuant to Pa.R.C.P. 236(b). However, he noted the address listed for him on the docket was the Teesdale Street residence, but at the time of the damages trial, he was in prison. Petition to Open, filed 2/18/21, at ¶ 22. Accordingly, he contended he never received notice of the assessment of damages trial.

He further averred he was not properly served with original process. Mr. Rue acknowledged that Ms. Roy served the complaint on his mother at the Teesdale Street residence. However, he indicated he was "out on bail at the time the complaint was originally served….and he was not residing with his parents at [the] Teesdale Street [address]." *Id.* at ¶¶ 9-10. Instead, Mr. Rue averred he "believes he was either residing at 8214 Craig Street Philadelphia or at an apartment within the St. Ive's Apartment Complex (not on Teesdale Street) [when the complaint was served]." *Id.* at ¶ 10.

---

[5] Mr. Rue filed this petition with the assistance of counsel, who continues to represent Mr. Rue on appeal. We note Mr. Rue did not initially attach to his petition a proposed answer to Ms. Roy's complaint. However, on March 26, 2021, he filed a proposed answer with new matter.

Mr. Rue attached to his petition signed affidavits from his mother, father, and sister indicating that Mr. Rue was not living at the Teesdale Street residence at any time during 2011. Mr. Rue also attached to his petition the deed to the Teesdale Street property, which revealed Mr. Rue's father, "Robert Rue", was the owner of the property. *Id.* at ¶ 10.

Mr. Rue suggested the confusion in this case occurred because he and his father have the same name, and while his mother, who accepted service of the complaint, lived at the Teesdale Street residence with a "Robert Rue," it was his father and not him. *Id.* at ¶ 12. He further suggested his mother was not competent to accept service since she was struggling with addiction and mental illness, and she simply ignored the complaint without informing her son, Mr. Rue, that it had been served at the Teesdale Street residence. *Id.* at ¶ 14. Thus, Mr. Rue contended he never received notice of the complaint.

Mr. Rue averred the "situation" become "worse" when, in May of 2012, a jury convicted him of several crimes in connection with the injury to Mr. Roy, and his bail was revoked. *Id.* at ¶ 15. He averred Ms. Roy was present in the courtroom when the jury returned a guilty verdict on May 24, 2012, and therefore, she should have been aware that he was in prison when she mailed the ten-day notice of intent to enter default judgment to the Teesdale Street residence on June 9, 2012. *Id.* at ¶¶ 16-18. Mr. Rue indicated he never received the notice since he was in prison. *Id.* at ¶ 20.

In summary, Mr. Rue averred:

> At all times material, [Mr. Rue] never resided at Teesdale Street when the complaint was filed and served on his mother; and he resided in a correctional facility when the notice of intent to take default was sent to Teesdale Street while [he was] awaiting sentencing from May until July of 2012. He then resided in a Western PA prison from approximately July 12, 2012[,] until June 2013. During all of this time, despite knowing with certainty that [Mr. Rue] did not reside at Teesdale Street beyond May 24, 2012, [Ms. Roy] took zero steps to correct [Mr. Rue's] address on the docket to reflect what [Ms. Roy] knew was his proper address; *i.e.*, within a PA Correctional Institution.

*Id.* at ¶ 20. Thus, he contended he has a reasonable explanation for failing to file an answer. *Id.* at ¶ 29.

Additionally, Mr. Rue suggested he promptly filed his petition to open after he received notice of the entry of the default judgment. In this vein, he contended he "only recently" learned of the entry of the default judgment on December 29, 2020, when he was served with post-judgment interrogatories. *Id.* at ¶ 30. Mr. Rue suggested that Ms. Roy "did nothing in terms of attempting to collect on the civil judgment from 2013 until the end of 2020." *Id.* at ¶ 36. Further, Mr. Rue averred he has a meritorious defense to the assault and battery civil claims in that he acted in self-defense. *Id.* at ¶ 27.

Moreover, Mr. Rue filed a petition to strike the default judgment on February 18, 2021. Relevantly, Mr. Rue alleged, *inter alia*, that the default judgment should be stricken as void since the record shows on its face a defect in the service of the complaint, the ten-day notice of intent to enter default judgment, and the notice of the damages assessment trial.

On March 11, 2021, Ms. Roy filed answers in opposition to Mr. Rue's petition to open the default judgment, as well as his petition to strike the default judgment. By order entered on June 22, 2021, the trial court denied Mr. Rue's petitions to open and strike the default judgment. This timely appeal followed, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Mr. Rue initially contends the trial court erred in denying his motion to strike the default judgment based on fatal defects appearing on the face of the record as it relates to the service of the complaint, the ten-day notice of intent to enter default judgment, and the notice of the assessment of damages trial.

This Court has held:

"An appeal regarding a petition to strike a default judgment implicates the Pennsylvania Rules of Civil Procedure." ***Green Acres Rehabilitation and Nursing Center v. Sullivan***, 113 A.3d 1261, 1267 (Pa.Super. 2015).

> Issues regarding the operation of procedural rules of court present us with questions of law. Therefore, our standard of review is *de novo* and our scope of review is plenary.

> A petition to strike a judgment is a common law proceeding which operates as a demurrer to the record. A petition to strike a judgment may be granted only for a fatal defect or irregularity appearing on the face of the record. [A] petition to strike is not a chance to review the merits of the allegations of a complaint. Rather, a petition to strike is aimed at defects that affect the validity of the judgment and that entitle the petitioner, as a matter of law, to relief. A fatal defect on the face of the record denies the prothonotary the authority to enter judgment. When a prothonotary enters judgment without authority, that judgment is void *ab initio.* When deciding if there

> are fatal defects on the face of the record for the purposes of a petition to strike a [default] judgment, a court may only look at what was in the record when the judgment was entered.

***Bank of New York Mellon v. Johnson***, 121 A.3d 1056, 1059-60 (Pa.Super. 2015) (quotation omitted).

"[A] petition to strike is not a chance to review the merits of the allegations of a complaint. Rather, a petition to strike is aimed at defects that affect the validity of the judgment and that entitle the petitioner, as a matter of law, to relief." ***Oswald v. WB Public Square Associates, LLC***, 80 A.3d 790, 794 (Pa.Super. 2013) (citation omitted). "The standard for 'defects' asks whether the procedures mandated by law for the taking of default judgments have been followed." ***Continental Bank v. Rapp***, 485 A.2d 480, 483 (Pa.Super. 1984) (citation omitted). ***See Liquid Carbonic Corp. v. Cooper & Reese, Inc.***, 416 A.2d 549, 550 (Pa.Super. 1979) ("If the record is self-sustaining, the judgment cannot be stricken.") (quotation and quotation marks omitted)). A fatal defect on the face of the record denies the prothonotary the authority to enter judgment. ***Erie Ins. Co. v. Bullard***, 839 A.2d 383, 388 (Pa.Super. 2003). When a prothonotary enters judgment without authority, that judgment is void *ab initio*. ***See id.***

Mr. Rue first contends the record reveals a fatal defect as to the affidavit/return of service of the complaint. Specifically, he alleges:

> Here, the record reveals that service was made on Debbie Rue and the affidavit in question suggests she is a family member who resides with Robert Rue. However, the affidavit of service does

not specify that the defendant is the son of Debbie Rue, and that he resides there; nor is there any suggestions in the affidavit that establishes that the process server questions Ms. Rue about her relationship with the Defendant in question.

Mr. Rue's Brief at 8 (citation to record omitted).

It is well-settled that:

Service of process is a mechanism by which a court obtains jurisdiction of a defendant, and therefore, the rules concerning service of process must be strictly followed. Without valid service, a court lacks personal jurisdiction of a defendant and is powerless to enter judgment against [the defendant].

Thus, improper service is not merely a procedural defect that can be ignored when a defendant subsequently learns of the action....However, the absence of or a defect in a return of service does not necessarily divest a court of jurisdiction of a defendant who was properly served. [T]he fact of service is the important thing in determining jurisdiction and...proof of service may be defective or even lacking, but if the fact of service is established jurisdiction cannot be questioned.

*Cintas Corp. v. Lee's Cleaning Services, Inc.*, 549 Pa. 84, 700 A.2d 915, 917-18 (1997) (citations and quotation marks omitted).

The Pennsylvania Rules of Civil Procedure govern service and relevantly provide the following:

**Rule 402. Manner of Service. Acceptance of Service.**

(a) Original process may be served

(1) by handing a copy to the defendant; or

(2) by handing a copy

(i) at the residence of the defendant to an adult member of the family with whom he resides; but if no adult member of the family is found, then to an adult person in charge of such residence[.]

Pa.R.C.P. 402(a)(1), (2)(i) (bold in original).

**Rule 405. Return of Service**

(a) When service of original process has been made the sheriff or other person making service shall make a return of service forthwith. If service has not been made and the writ has not been reissued or the complaint reinstated, a return of no service shall be made upon the expiration of the period allowed for service.

* * *

(b) A return of service shall set forth the date, time, place and manner of service, the identity of the person served and any other facts necessary for the court to determine whether proper service has been made.

Pa.R.C.P. 405(a), (b) (bold in original).

Here, our review confirms the affidavit/return of service complies with Pa.R.C.P. 405. Specifically, the return of service sets forth the date (3/11/2011), the time (9:25 p.m.), the place (3260 Teesdale Street Apt 2, Philadelphia, PA),[6] and the manner/identity of the person served (handing complaint to adult family member with whom defendant resides, Debbie Rue). The affidavit/return of service also describes the person who accepted service as being a fifty-year-old Caucasian woman who was 5'6" tall and weighing 170 pounds.

Nevertheless, Mr. Rue contends the affidavit/return of service is facially defective since the affidavit/return of service does not reveal that the process server determined the precise familial relationship of Debbie Rue to Mr. Rue.

---

[6] This is the same address Ms. Roy set forth in the complaint as it pertains to Mr. Rue and, as indicated *supra*, it is the sole address listed on the certified docket for Mr. Rue.

However, this is not an explicit requirement of Pa.R.C.P. 405.[7] Since the affidavit/return of service sets forth sufficient information for the trial "court to determine whether proper service has been made," the trial court did not err in denying Mr. Rue's petition to strike on this basis. *See Continental Bank*, *supra*.

Mr. Rue next contends the trial court erred in denying his motion to strike because the record reflects a fatal error since he was not properly served with the ten-day notice of intent to file a default judgment as is required by Pa.R.C.P. 237.1. Mr. Rue contends the June 9, 2012, service of the ten-day notice was defective since Ms. Roy mailed the notice to the Teesdale Street residence, which was not Mr. Rue's residence. Rather, Mr. Rue contends that, as of May 24, 2012, he was confined in prison.

Mr. Rue's issue implicates the interpretation of the procedural rules of court, and thus, we are presented with a question of law. *See Bank of New York Mellon*, *supra*. Accordingly, "our standard of review is *de novo* and our

---

[7] To the extent Mr. Rue contends "Debbie Rue" was not, under Pa.R.C.P. 402(a)(2)(i), "an adult member of the family with whom he resides…[or] an adult person in charge of such residence[,]" the trial court was unable to consider Mr. Rue's argument in the context of a motion to strike the default judgment. *See Digital Communications Warehouse, Inc. v. Allen Investments, LLC*, 223 A.3d 278 (Pa.Super. 2019) (holding trial court was unable to consider the appellant's argument that the person upon whom the complaint was served was not an authorized agent in the context of a motion to strike as such evidence was outside the record).

scope of review is plenary." ***Osward v. WB Public Square Associates, LLC***, 80 A.3d 790, 793 (Pa.Super. 2013).

Mr. Rue's argument focuses on the interplay between Pennsylvania Rules of Civil Procedure 237.1 and 440. Rule 237.1 requires a plaintiff to provide a defendant with at least ten days prior notice of her intent to enter a default judgment. The Rule relevantly provides:

> **Rule 237.1 Notice of Praecipe for Entry of Judgment of Non Pros for Failure to File Complaint or by Default for Failure to Plead**
>
> ***
>
> (2) No judgment of non pros for failure to file a complaint or by default for failure to plead shall be entered by the prothonotary unless the praecipe for entry includes a certification that a written notice of intention to file the praecipe was mailed or delivered
>
> ***
>
> (ii) in the case of a judgment by default, after the failure to plead to a complaint and at least ten days prior to the date of the filing of the praecipe to the party against whom judgment is to be entered and to the party's attorney of record, if any.
>
> The ten-day notice period in subdivision (a)(2)(i) and (ii) shall be calculated forward from the date of the mailing or delivery, in accordance with Rule 106.
>
> (3) A copy of the notice shall be attached to the praecipe.
>
> (4) The notice and certification required by this rule may not be waived.
>
> *Note:* A certification of notice is a prerequisite in all cases to the entry by praecipe of a judgment of non pros for failure to file a complaint or by default for failure to plead to a complaint. Once the ten-day notice has been given, no further notice is required by the rule even if the time to file the complaint or to plead to the complaint has been extended by agreement.

Pa.R.C.P. 237.1(a)(2)(ii), (3), (4) (bold in original).

The purpose of this rule is to ensure that default judgments are not entered without a defendant's prior knowledge, and to provide the defaulting party with an opportunity to cure the defect prior to the entry of default judgment. ***Green Acres Rehabilitation and Nursing Center***, 113 A.3d at 1271-72. "A record that reflects a failure to comply with Rule 237.1 is facially defective and cannot support a default judgment." ***Erie Ins. Co.***, 839 A.2d at 387.

The Comment to Rule 237.1 indicates that the ten-day notice must be in writing. Furthermore, the Comment provides:

> The ten-day notice may be mailed or delivered. Registered or certified mail is not required. The ten-day grace period for compliance runs from the date of delivery, if the notice is delivered. If the notice is mailed, the ten-day period runs from the date of mailing and not from the date of receipt. If proof of the date of mailing is important, it may be obtained from the post office by requesting Post Office Form 3817, Certificate of Mailing, which will show the date, the name of the sender, and the addressee.

Pa.R.Civ.P. 237.1, Comment.

Moreover, Pennsylvania Rule of Civil Procedure 440 sets forth the requirements for service of legal papers other than original process. Where, as here, there was no attorney, the Rule provides:

> **Rule 440. Service of Legal Papers other than Original Process**
>
> (a)(1) Copies of all legal papers other than original process filed in an action or served upon any party to an action shall be served upon every other party to the action….
>
> ***

- 14 -

> (2)(i) If there is no attorney of record, service shall be made by handing a copy to the party or by mailing a copy to or leaving a copy for the party at the address endorsed on an appearance or prior pleading or the residence or place of business of the party, or by transmitting a copy by facsimile as provided by subdivision (d).
>
> (ii) If such service cannot be made, service shall be made by leaving a copy at or mailing a copy to the last known address of the party to be served.

Pa.R.C.P. 440(a)(1), (2)(i) and (2)(ii) (bold in original).

Here, Mr. Rue maintains the ten-day default notice was not sent to his residence since, as of May 24, 2012, he was residing in prison and not at the Teesdale Street residence, which is the address to which the ten-day default notice was mailed on June 9, 2012. Therefore, he contends the record reflects a fatal error, which required the trial court to strike the default judgment. We disagree with Mr. Rue's contention.

When Ms. Roy filed the praecipe to enter a default judgment against Mr. Rue, her attorney properly attached to the document a copy of the ten-day notice required by Pa.R.C.P. 237.1. The ten-day notice is addressed to Mr. Rue at the Teesdale Street residence.

Further, the attorney certified the notice was sent via certified mail and regular mail to the Teesdale Street residence, which was the address of record for Mr. Rue. Additionally, Ms. Roy's attorney attached an affidavit of non-military service to the praecipe to enter default judgment indicating Mr. Rue was not in the military and resided at the Teesdale Street residence.

Accordingly, there was no indication in the certified record that service to Mr. Rue at the Teesdale Street residence was improper. *See* Pa.R.C.P. 440.

- 15 -

To the extent Mr. Rue challenges the accuracy of the factual averment in the record as to his "correct" address, we note such an issue is more properly considered in a proceeding to open the judgment and not to strike it. **See Resolution Trust Corp. v. Copley Qu-Wayne Associates**, 546 Pa. 98, 683 A.2d 269, 273 (1996). Thus, considering only the facts of record, we agree with the trial court's determination that no fatal defect or irregularity was apparent on the face of the record at the time the default judgment was entered. **See Bank of New York Mellon**, **supra**.

Mr. Rue next contends the trial court erred in denying his motion to strike because the record reflects a fatal error under Pennsylvania Rule of Civil Procedure 236(b) since he was not properly served with the trial court's January 7, 2013, order indicating that an assessment of damages trial against Mr. Rue would be held on January 16, 2021, at 9:30 a.m.

This issue presents us with a question of law, and, accordingly, "our standard of review is *de novo* and our scope of review is plenary." **Osward**, 80 A.3d at 793.

Pennsylvania Rule of Civil Procedure 236 relevantly provides:

**Rule 236. Notice by Prothonotary of Entry of Order or Judgment**

(a) The prothonotary shall immediately give written notice of the entry of

\*\*\*

    (2) any other order or judgment to each party's attorney of record or, if unrepresented, to each party. The notice shall include a copy of the order or judgment.

\*\*\*

- 16 -

(b) The prothonotary shall note in the docket the giving of the notice[.]

Pa.R.C.P. 236(a)(2), (b) (bold in original).

In the case *sub judice*, the certified docket entry contains a notation that the Prothonotary provided notice of the order to Mr. Rue in accordance with Rule 236. Mr. Rue does not dispute this fact, but he argues the notice was insufficient since the Prothonotary mailed the copy of the order to the Teesdale Street residence when he was confined in prison.

There is no dispute that the Teesdale Street residence is the only address of record for Mr. Rue. Accordingly, there is no indication in the certified record that the Prothonotary's providing of notice of the trial court's order to Mr. Rue at the Teesdale Street residence was improper.[8] As indicated *supra*, to the extent Mr. Rue challenges the accuracy of the factual averment in the record as to his "correct" address, we note such an issue is more properly considered in a proceeding to open the judgment and not to strike it. **See Resolution Trust Corp.**, **supra**. Thus, we agree with the trial court's determination that no fatal defect or irregularity was apparent on the face of the record.[9] **See Bank of New York Mellon**, **supra**.

---

[8] There is no indication the Prothonotary's mailing of the notice was returned as undeliverable.

[9] We note Mr. Rue summarily suggests the trial court failed to set forth sufficient analysis in its opinion regarding the denial of Mr. Rue's petition to
*(Footnote Continued Next Page)*

Mr. Rue next contends the trial court abused its discretion in denying his motion to open the default judgment. Initially, he suggests the trial court failed to consider whether service of the complaint was proper in this case. Moreover, Mr. Rue contends that, in determining whether Mr. Rue promptly filed his petition to open the default judgment, the trial court abused its discretion in concluding he had "constructive notice" of the default judgment as early as 2013. He also contends the trial court erred in concluding he did not have a meritorious defense to the allegations contained in the complaint.

A petition to open a default judgment and a petition to strike a default judgment seek distinct remedies and are generally not interchangeable. **Stauffer v. Hevener**, 881 A.2d 868, 870 (Pa.Super. 2005). Unlike a petition to strike a judgment, "a petition to open a judgment is an appeal to the equitable powers of the court." **Mother's Restaurant Inc. v. Krystkiewicz**, 861 A.2d 327, 336 (Pa.Super. 2004) (*en banc*) (quotation omitted).

> The decision to grant or deny a petition to open a default judgment is within the sound discretion of the trial court, and we will not overturn that decision absent a manifest abuse of discretion or error of law....An abuse of discretion is not a mere error of judgment, but if in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused.

**Smith v. Morrell Beer Distributors, Inc.**, 29 A.3d 23, 25 (Pa.Super. 2011).

---

strike the default judgment. **See** Mr. Rue's Brief at 11. In light of our discussion *supra*, we decline to address this issue further and find Mr. Rue is not entitled to relief.

"Generally speaking, [under Pennsylvania law,] a default judgment may be opened if the moving party has (1) promptly filed a petition to open the default judgment, (2) provided a reasonable excuse or explanation for failing to file a responsive pleading, and (3) pleaded a meritorious defense to the allegations contained in the complaint." *Myers v. Wells Fargo Bank, N.A.*, 986 A.2d 171, 175-76 (Pa.Super. 2009).[10]  When considering a petition to open a judgment, "matters *dehors* the record filed by the party in whose favor the warrant is given, *i.e.*, testimony, depositions, admissions, and other evidence, may be considered by the court." *Resolution Trust Corp.*, 683 A.2d at 273 (citation omitted).

"However, where the party seeking to open a judgment asserts that service was improper, a court must address this issue before considering any other factors." *Digital Communications Warehouse, Inc.*, 223 A.3d at 288.  As our Supreme Court has explained:

> If valid service has not been made, then the judgment should be opened because the court has no jurisdiction over the defendant and is without power to enter a judgment against him or her.  In making this determination, a court can consider facts not before it at the time the judgment was entered.  Thus, if a party seeks to challenge the truth of factual averments in the record at the time judgment was entered, then the party should

---

[10] Pennsylvania Rule of Civil Procedure 237.3 relevantly provides that "[i]f the petition is filed within ten days after the entry of a default judgment on the docket, the court shall open the judgment if one or more of the proposed preliminary objections has merit or the proposed answer states a meritorious defense."  Pa.R.C.P. 237.3(b)(2).  Here, there is no dispute that Mr. Rue failed to file his petition to open within ten days after entry of the default judgment.

pursue a petition to open a judgment, not a petition to strike the judgment.

**Cintas Corp.**, **supra**, 700 A.2d at 919 (citations omitted).

Initially, Mr. Rue avers the trial court abused its discretion because it "skipped over the service of process issues completely[.]" Mr. Rue's Brief at 12. He contends the trial court "never consider[ed] the alleged factual inaccuracies in the affidavit of service [for the complaint]." **Id.** at 13. He avers "there was a factual error in the affidavit of service; *i.e.*, the part where it indicates that Defendant lived with Debbie Rue at the Teesdale address." **Id.** at 12.

We disagree with Mr. Rue's averment that the trial court failed to consider the issue of service of the complaint. Further, we find no abuse of discretion in the trial court's conclusion that Mr. Rue was properly served with the complaint when his mother accepted service at the Teesdale Street residence.

In its opinion, the trial court specifically indicated:

> [Mr. Rue] alleges that when the original complaint was served, it was served to his parents' home on Teesdale Street. [Mr. Rue] asserts that he was residing either at 8214 Craig Street (Philadelphia, PA 19136) or at the St. Ive's Apartment Complex (1340 Stewarts Way, Philadelphia, PA 19154) at that time….[Thus,] [Mr. Rue] asserts that service was improper, and that the judgment should be opened because he had not received proper notice regarding this matter.

Trial Court Opinion, filed 11/2/21.[11]

In considering the service issue, the trial court concluded "the complaint was served to [Mr. Rue's]…address on Teesdale Street, where service was accepted by [Mr. Rue's] mother." *Id.* Thus, the trial court rejected Mr. Rue's contention that he was not properly served with the complaint; but rather, the trial court's holding suggested the Teesdale Street residence was Mr. Rue's residence and his mother accepted service for him at the residence.

Moreover, we conclude there is ample evidence in support of the trial court's conclusion. For example, in her answer in opposition to Mr. Rue's petition to open, Ms. Roy attached as an exhibit the public records from the LexisNexis database, which revealed that Mr. Rue's last known address, as of May of 2010, was the Teesdale Street residence. Further, to demonstrate the address pertained to Mr. Rue (and not just to his father), Ms. Roy's exhibit provided information regarding Mr. Rue's date of birth and social security number.[12]

Further, we note that, in his petition to open, Mr. Rue failed to establish an alternate address where he was living when Ms. Roy served the complaint in March of 2011. He asserted he "believes" he was living at an address on Craig Street or at the St. Ive's Apartment Complex. *See* Mr. Rue's Petition to

---

[11] The trial court's opinion is unpaginated.

[12] Mr. Rue has not averred the trial court was not permitted to rely upon this exhibit in ruling on the petition to open the default judgment.

Open, filed 2/18/21, ¶ 10. However, aside from expressing uncertainty as to where he may have been living in March of 2011, Mr. Rue provided no utility bills, lease, deed, or other documents to shed light on the matter. *See Dominic's Inc. v. Tony's Famous Tomato Pie & Restaurant, Inc.*, 214 A.3d 259, 270 (Pa.Super. 2019) (stating that the "petitioning party [in a default judgment] bears the burden of producing sufficient evidence to substantiate its alleged defenses"). He also provided no affidavit from a roommate or landlord. *See id.* Although Mr. Rue presented the trial court with affidavits from his mother, father, and sister, all of whom summarily asserted Mr. Rue did not live at the Teesdale Street residence, the affidavits shed no light on an alternate address where Mr. Rue allegedly lived in March of 2011.

Based on the aforementioned, the trial court properly considered the evidence presented by the parties and did not abuse its discretion in finding Ms. Roy properly served the complaint on Mr. Rue's mother, "an adult family member with whom [Mr. Rue] resides[.]" Pa.R.C.P. 402(a)(2)(i). Accordingly, Mr. Rue is not entitled to relief on this claim.

Turning to Mr. Rue's remaining arguments regarding the denial of his petition to open, we note that, if a petition to open a default judgment fails to fulfill any one prong of the three-prong test, then the petition must be denied. *Myers*, *supra*. "[T]he trial court cannot open a default judgment based on the 'equities' of the case when the defendant has failed to establish all three

of the required criteria." **US Bank N.A. v. Mallory**, 982 A.2d 986, 995 (Pa.Super. 2009).

With regard to the first prong, whether the petition to open was timely filed, this Court has held the following:

> The timeliness of a petition to open a judgment is measured from the date that notice of the entry of the default judgment is received. The law does not establish a specific time period within which a petition to open a judgment must be filed to qualify as [timely]. Instead, the court must consider the length of time between discovery of the entry of the default judgment and the reason for delay.
>
> \*\*\*
>
> In cases where the appellate courts have found a "prompt" and timely filing of the petition to open a default judgment, the period of delay has normally been less than one month. **See Duckson v. Wee Wheelers, Inc.**, 620 A.2d 1206 (Pa.Super. 1993) (one day is timely); **Alba v. Urology Associates of Kingston**, 598 A.2d 57 (Pa.Super. 1991) (fourteen days is timely); **Fink v. General Accident Ins. Co.**, 594 A.2d 345 (Pa.Super. 1991) (period of five days is timely).

**Myers**, 986 A.2d at 176 (citation omitted). **See Allegheny Hydro No. 1 v. American Line Builders, Inc.**, 722 A.2d 189, 193-94 (Pa. Super. 1998) (holding a 41-day delay in filing a petition to open a default judgment was untimely; collecting and setting forth cases holding delays in filing a petition to open a default judgment of 21 days and 37 days rendered those petitions untimely).

In the case *sub judice*, the trial court entered its default judgment against Mr. Rue on June 22, 2012, and the court entered its order assessing

damages on January 18, 2013. Mr. Rue did not file his petition to open until February 18, 2021.

In his petition to open, Mr. Rue contended the delay was attributed to the fact that, in May of 2012, he was committed to prison, where he remained until June of 2013. Thus, he argued he did not receive notice of the default judgment or the order assessing damages, which were mailed to the Teesdale Street residence. He averred he first learned of the default judgment on December 29, 2020, when he was served with post-judgment interrogatories, and he filed his petition to open thereafter, on February 18, 2021.

In addressing the first prong, the trial court indicated:

> [T]he record reveals that [Mr. Rue] was served in 2013 with two documents, which referred to the ongoing legal matter, while he was incarcerated at SCI-Fayette Street Correctional Facility, as indicated by Exhibits A, B, and C contained in [Mr. Rue's] answer. These documents (an Assessment, Worksheet, and Order to [Mr. Rue] and a Motion for Approval of Settlement and Distribution of Funds) would have given [Mr. Rue] constructive notice of the Default Judgment. There is no evidence to suggest that the correctional facility failed to inform [Mr. Rue] of these incoming documents. Together, these facts suggest [Mr. Rue] was given notice of this Default Judgment in 2013 yet failed to file a Motion to Open the Judgment until 2021. Therefore, [Mr. Rue] has not to [*sic*] promptly filed a petition to open.

Trial Court Opinion, filed 11/2/21 (citations to record omitted).

Mr. Rue contends the trial court's analysis is flawed since, absent a hearing on the matter, the trial court had no way to determine whether Mr. Rue actually received the documents while he was in prison in 2013. He notes the return of service cards for the documents were signed by someone other

than himself.  Mr. Rue's Brief at 13-14.  Thus, he suggests the evidence indicates that the earliest he had actual notice of the default judgment was on December 29, 2020, when he was served with the post-judgment interrogatories.

Assuming, *arguendo*, that Mr. Rue is correct, we nevertheless conclude Mr. Rue failed to meet the first prong.  By his own admission, Mr. Rue was aware of the default judgment on December 29, 2020; however, he did not file his petition to open until fifty-one days later, on February 18, 2021.  He has offered no reason for this delay. Accordingly, Mr. Rue has failed to establish the prompt filing of his petition to open.[13] **See Myers**, **supra**; **Allegheny Hydro No. 1**, **supra**.  Thus, the trial court did not abuse its discretion in denying his petition to open.

For all of the foregoing reasons, we affirm.

Affirmed.

---

[13] "As an appellate court, we may affirm the judgment of the lower court where it is correct on any legal ground or theory disclosed by the record, regardless of the reason or theory adopted by the trial court." **Moss Rose Mfg. Co. v. Foster**, 314 A.2d 25, 26 (Pa.Super. 1973) (*en banc*) (citation omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/12/2022</u>